JAMÉS M. EDWARDS and another

*vs.*

CHARLES W. H. PETERSON and another.

Cumberland.   Opinion June 2, 1888.

*Equity.   Assignment of wages.*

An assignment of wages expected to be earned in the future in a specified employment, though not under an existing employment or contract, is valid in equity.

80 367|
86 543|

ON exceptions.

Bill in equity against defendant, Peterson, and Forest City Steamboat Company.   The exceptions were to the ruling of the court sustaining a demurrer to the bill.   The material facts are stated in the opinion.

*George C. Hopkins* (*Elliot King* with him), for the plaintiffs, cited: Story, Eq. Juris. § 1040; Pomeroy, Eq. Jur. § 1288; Benjamin on Sales, Vol. 1, pp. 98 and 100; Jones on Mortgages, § 152; *Field* v. *Mayor of N. Y.* 6 N. Y. 179; *McCaffrey* v. *Woodin,* 65 N. Y. 459 (22 Am. R. 654); *Smithurst* v. *Edmunds,* 14 N. J. Eq. 408; *Gevers* v. *Wright's Ex.* 18 N. J. Eq. 334; *Pierce* v. *Emery,* 32 N. H. 484; *Smith* v. *Atkins,* 18 Vt. 465; *Calkins* v. *Lockwood,* 17 Conn. 154; *Walker* v. *Vaughn,* 33 Conn. 577; *Fitzgerald* v. *Vestal,* 4 Sneed, 258; 65 N. C. 695; *Cotten* v. *Willoughby,* 83 N. C. 75 (35 Am. R. 565); *Fejavary* v. *Broesch,* 52 Iowa, 90 (35 Am. R. 262); *Everman* v. *Robb,* 52 Miss. 653 (24 Am. R. 687); *Apperson* v. *Moore,* 30 Ark. 56 (21 Am. R. 170); *Pennoch* v. *Coe,* 23 Howard, 117; *Butt* v. *Ellett,* 19 Wall. 544; *Mitchell* v. *Winslow,* 2 Story, 644; *Brett* v. *Carter,* 2 Lowell, 458; *Scott* v. *Springfield R. R. Co.* 6 Bissell, 534; *Dillon* v. *Barnard,* 1 Holmes, 394; *Barnard* v. *N. & W. R. R. Co.* 4 Cliff. 351, 365; *Holroyd* v. *Marshall,* 10 House of Lords cases, 191; *Hamlin* v. *Jerrard,* 72 Maine, pp. 75 and 88; *Griffith* v. *Douglass,* 73 Maine, 537; Herman on Estoppel, § 296.

*W. H. Looney*, for defendants.

The assignment of a mere expectation of earning money, if there be no contract on which to found the expectation, is of no effect. *Mulhall* v. *Quinn*, 1 Gray, 105; *Hartley* v. *Tapley*, 2 Gray, 565; *Twiss* v. *Cheever*, 2 Allen, 40; *Herbert* v. *Bronson*, 125 Mass. 475; *Emerson* v. *E. & N. A. Railway*, 67 Maine, 387; *Farnsworth* v. *Jackson*, 32 Maine, 419.

Where no rule of law is infringed, and the rights of third persons are not prejudiced, courts of equity will, in proper cases, give effect to mortgages of subsequently acquired property. *Beall* v. *White*, 94 U. S. 382.

Some courts of equity decide that a man cannot assign or mortgage that which does not exist. *Moody* v. *Wright*, 13 Met. 17.

"The equitable doctrine with respect to the assignment of property to be acquired in future is extended to this species of equitable transfer. The fund need not be actually in being. If it exists potentially, that is, if it will in due course of things arise from a contract or arrangement already made or entered into when the order is given, the order will operate as an equitable assignment of such fund as soon as it is acquired, and create an interest in it which a court of equity will enforce." Pomeroy's Equity Juris. Vol. III. § 1283.

The cases which have been cited to illustrate the principle contended for by the complainants do not sustain their position. The leading cases which it is claimed advocate this view are *Pennoch* v. *Coe*, 23 Howard, 117; *Hamlin* v. *Jerrard*, 72 Maine, 62; *Mitchell* v. *Winslow*, 2 Story, 630.

In *Pennoch* v. *Coe*, and *Hamlin* v. *Jerrard*, *supra*, it was decided that the after acquired rolling stock of a railroad company attaches in equity to a mortgage, if within the description, from the time it is placed there, so as to protect it against the judgment creditors of the railroad company.

In *Mitchell* v. *Winslow*, *supra*, it was held that a mortgage given to secure a note payable in four years, for all the machinery in the manufactory of the mortgagors, with all the tools and implements of every kind thereunto belonging and appertain-

ing, together with all the tools and machinery for the use of the manufactory, which they might at any time purchase for four years from the date of the mortgage, and also the stock which they might manufacture or purchase during the said four years, constituted such a lien in favor of the mortgagee to the property acquired subsequent to the time of executing the mortgage as is protected under the provision in the second section of the Bankrupt Act, and that such stipulations in a mortgage, in regard to property subsequently acquired, protect such property from other creditors of the mortgagor.

"A mortgage of a railroad and its franchises," in harmony with this principle, "operates as an equitable assignment of the rolling stock, locomotives, cars and the like, which are required or manufactured by the company after the execution of the instrument, and passes an equitable ownership in, or lien in such articles to the mortgagee. Other cases take a different view, and hold that the rolling stocks are fixtures, and become a part of the realty as soon as acquired, and that being so annexed to the soil, the legal title thereto is vested in the mortgagee, or that the lien of the mortgage extends to them." *Vide* Pomeroy's Eq. Jur. Vol. III. § 1289, and cases cited in note.

It has also been decided, in harmony with the principle with which we contend, that after acquired lands which cannot be regarded as accretions of the road itself, will not pass under a general mortgage of a railroad as a parcel thereof, also that lands subsequently acquired, and not essential to the operation of the road, do not pass by implication under such a mortgage. *Calhoun* v. *Paducah, &c. R. R. Co.* 9 Cent. L. J. 66; 8 Reporter, 395.

HASKELL, J. Bill in equity to uphold an assignment of wages expected to be earned in the future, but not under an existing employment or contract.

When the assignment was made, the assignor was in the employ of the respondent steamboat company, but was discharged

the next day. The assignment covered wages to be earned in the employ of the steamboat company between the day of its date, October 14, and April 1, following, and was recorded as required by R. S., c. 111, § 6.

Both the assignor and the steamboat company expected the former's services would be again required by the latter, and that his employment would then begin. It did begin November 1st, and continued later than April 1st. The assignor was decreed an insolvent debtor January 21st, and, on that day, the assignee demanded from the steamboat company the wages to be earned thereafter during the time covered by the assignment. The wages were earned, and amounted to more than the debt secured by the assignment. The transactions throughout were open and above board, and not tinctured with fraud.

It is settled at law in this state, that " the mere expectation of earning money cannot, in the absence of any contract on which to found such expectation, be assigned. Future wages to be earned under a present contract imparting to them a potential existence may be assigned, although the contract may be indefinite as to time and amount." *Wade* v. *Bessey*, 76 Maine, 413 ; *Farrar* v. *Smith*, 64 Maine, 74 ; *Emerson* v. *E. & N. A. Railway Co.* 67 Maine, 392. These cases were all actions at law, and, as said in the last case cited, were decided upon " legal, and not equitable rules."

" It is common learning in the law, that a man cannot grant or charge that which he hath not." *Looker* v. *Peckwell*, 9 Vroom, 253. But, as said by the Chief Justice in *Emerson* v. *The Railway Co.*, " the reason that it may be different in equity is, not that a man conveys *in présenti* what does not exist, but that which is in form a conveyance operates in equity by way of present contract merely, to take effect and attach to the things assigned as soon as they come *in esse*, to be regarded before that time as only an agreement to convey, and after that time as a conveyance."

So it was held in *Field* v. *The Mayor, etc. of New York*, 2 Seld. 179, that the assignment of a claim against the city for work to be done and materials to be furnished, not founded upon

an existing contract and having no potential existence, was valid in equity. The court says, page 187, "The better opinion, I think, now is, that courts of equity will support assignments, not only of choses in action, but of contingent interests and expectations, and of things which have no present actual exist-- ence, but rest in possibility only, provided the agreements are fairly entered into, and it would not be against public policy to uphold them."

So in *Williamson* v. *Colcord*, 1 Hask. 620, it was held that the mere expectancy and possibility of indemnity for the destruction of a vessel by a rebel cruiser was subject to donation, even before the Geneva commission was agreed to by England and the United States.

An assignment of a legacy expected from a living person was held valid in equity after the legacy became payable. The court says : " Even a naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale, if made *bona fide*, for a valuable consideration, and will be enforced in equity after the death of the ancestor." *Bacon* v. *Bonham*, 6 Stew. 616 ; S. C. 12, C. E. Gr. 209.

The true doctrine seems to be "that, to make a grant or assignment valid at law, the thing which is the subject of it must have an existence, actual or potential, at the time of such grant or assignment. But courts of equity support assignments not only of choses in action, but of contingent interests and expecta-- tions, and also of things which have no present actual or potential existence, but rest in mere possibility only." *Smithurst* v. *Edmunds*, 1 McCart. 416 ; *Langton* v. *Horton*, 1 Hare, 549 ; *Robinson* v. *McDonnell*, 5 M. & S. 228 ; *Whitworth* v. *Ganyim*, 3 Hare, 416 ; *Apperson* v. *Moore*, 30 Ark. 56.

Nor can injustice result from this doctrine. If the *res* come to the hands of the assignor subject to liens or incumbrances, the assignee must take it subject thereto. *Williamson* v. *N. J. S. R. R. Co.* 2 Stew. 311 ; *Wellenk* v. *Morres Canal Co.* 3 Gr. Ch. 377 ; *Dunham* v. *Railway Co.* 1 Wall. 254 ; *Galveston R. R. Co.* v. *Cowdrey*, 11 Wall. 459 ; *U. S.* v. *N. O. R. R. Co.* 12 Wall. 362.

The invalidity of a grant at law of a mere expectancy imports no more than that it is ineffectual to pass the legal title. Equity construes the instrument as imposing a lien upon the *res* when produced or acquired, leaving the legal title still in the grantor, who may by some act ratify the grant, as by delivery of the property, and then the legal title is complete in the vendee. *Everman* v. *Robb*, 52 Miss. 653.

So in *Deering* v. *Cobb*, 74 Maine, 332, a mortgage of a stock of goods covering new goods purchased with the proceeds of the stock sold was held valid at law, after possession taken by the mortgagee, as against the assignee in insolvency of the mortgagor.

The rule laid down by Judge STORY in *Mitchell* v. *Winslow*, 2 Story, 630, seems to have been very generally followed by all chancery courts in this country. He says, "It seems to me a clear result of all the authorities that, whenever the parties by their contract intend to create a positive lien or charge, either upon real or personal property, whether then owned by the assignor or contractor or not, or if personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property, as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily, or with notice, or in bankruptcy." This rule has been followed in *Pennoch* v. *Coe*, 23 How. 117; *Seymour* v. *C. & N. F. R. R. Co.* 25 Barb. 288; *Sellers* v. *Leister*, 48 Miss. 524; *Butt* v. *Ellett*, 19 Wall. 544; *Apperson* v. *Moore*, 30 Ark. 56; *McCaffrey* v. *Woodin*, 65 N. Y. 459; *Barnard* v. *N. & W. R. R. Co.* 4 Clif. 351; *Brett* v. *Carter*, 2 Low. 458; *Gregg* v. *Sanford*, 24 Ill. 719; S. C. 76 A. D. 719, with an elaborate note citing many authorities, p. 723; *Walker* v. *Vaughn*, 33 Conn. 577; *Wilcox* v. *Daniels*, 15 R. I. 261.

The case of *Holroyd* v. *Marshall*, 10 H. L. C. 223, seems to extend the rule stated further than Judge STORY. In that case it is said: "Whatever doubts, therefore, may have been formerly entertained upon the subject, the right of priority of an equitable mortgagee over a judgment creditor, though without notice, may now be considered to be firmly established."

Our own court has laid down the rule: "At law, property non existing but to be acquired at a future time, is not assignable. In equity it is so." *Hamlin* v. *Jerrard*, 72 Maine, 77; *Morrill* v. *Noyes*, 56 Maine, 458; *Griffith* v. *Douglass*, 73 Maine, 532.

The assignment set up in this case was given to secure the payment for groceries furnished and to be furnished to the assignor and his family. It is of wages to be earned of a certain employer within a specified time. It was seasonably recorded. No claim is made under it, until actual notice had been given to the employer. No other creditor intervenes an attachment or otherwise objects to the validity of the assignment. The controversy is practically between the immediate parties to it. It cannot be said to contravene public policy. *Smith* v. *Atkins*, 18 Vt. 461. The consideration was most meritorious, and the assignment was not given to delay creditors.

Whether such an assignment would be valid against subsequent attaching creditors, with or without notice, it is not here necessary to decide; nor is the effect of the record of such an assignment as notice to the employer or to attaching creditors considered; nor is an assignment upheld where it appears to have been given without a meritorious consideration, or to have operated to hinder or delay creditors, indicating a want of equity.

From the authorities cited the court is clearly of opinion that the assignment must be upheld, and, therefore, agreeable to the stipulation of the parties, ordered,

> *Exceptions sustained. Demurrer overruled. Judgment against both respondents for the sum of $54, and interest from April 1, 1886, with costs. Decree below accordingly.*

PETERS, C. J., WALTON, VIRGIN and FOSTER, JJ., concurred.